# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

FERTILIZANTES TOCANTINS S.A.

    Plaintiff,                                      Case No.

v.

TGO AGRICULTURE (USA) INC.,

    Defendant.

_____/

## COMPLAINT FOR BREACH OF
## CONTRACT AND DECLARATORY RELIEF

Plaintiff, Fertilizantes Tocantins S.A. ("FTO"), sues Defendant, TGO Agriculture (USA) Inc. ("TGO"), for Breach of Contract (express and implied) and for Declaratory Relief, and alleges as follows:

## NATURE OF THE ACTION

1. FTO is a major Brazilian fertilizer providing its product to commercial farmers throughout the country of Brazil.

2. TGO is an international exporter and importer of fertilizers, agricultural products, and related chemical products.

3. This action arises from TGO's failure to deliver 45,000 MT of fertilizer after the parties agreed to the order and shipment as confirmed in multiple writings among the parties.

4. TGO's breach of contract has caused substantial losses and hardship not only to FTO's economic interests, but also to various Brazilian farmers who

depend on the fertilizer, the loss of which substantially affects their harvest during critical harvesting periods.

5. As a result, FTO brings this action to enforce its agreement and seek monetary damages for the losses caused by TGO's breach of an express and implied contract.

## PARTIES, JURISDICTION, AND VENUE

6. FTO is a public limited company organized under the laws of the country of Brazil.

7. FTO's principal place of business is in the country of Brazil.

8. TGO is a domestic corporation incorporated in the State of Delaware, with a primary office in Tampa, Florida.

9. FTO is a citizen of a foreign state, TGO is a citizen of a state within the United States, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Therefore, this Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

10. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2) because TGO resides in this district and a substantial part of the events or omissions giving rise to FTO's claims occurred here.

## FACTUAL BACKGROUND

11. FTO is a top-five fertilizer supplier in Brazil. As such, FTO regularly negotiates and confirms shipment orders of fertilizers for use by its farming customers.

12. In September 2020, FTO engaged in extensive negotiations with TGO for the purchase of a large volume of fertilizer for use in farming.

13. On September 11, 2020, after several days of negotiation, FTO and TGO confirmed via email the purchase of 20,000 MT of fertilizer at $145 USD/MT.

14. The order and acceptance confirmed all essential terms of the agreement, including the amounts of product, the price, and the dates for delivery.

15. On September 11, 2020, FTO sent a confirmation to representatives of TGO via email with the subject "Purchase Confirmation."

16. The email confirmation contained the following terms and conditions:

**Product:** AS Granular - N 21%, S 23%

**Quantity:** 20000 MT +/- 10% sellers option

**Price:** 145 (USD) / MT (CFR)

**Origin:** China -- Producer must be: Best sign, Yike, Hengyi, Best Win or Wuzhoufeng

**Payment:** CAD – 5 business days after receiving copy of originals.

**Packing:** Bulk

**First day Laycan:** 2021-08-01

**Last day Laycan:** 2021-10-31

**Discharge port**: HBSA (Vila do Conde – PA)

**Discharge rate port**: 4000

**Discharge type:** SHINC

> **Inspection**: Done by independent and internationally recognized surveyor at Seller's cost.
>
> **Quality:** Free flowing and free from harmful substances at discharge port.
>
> **Dem/Des:** As per Vessel Charter Party. Demurrage rate declared shall be reflective of existing charter market rates for the shipping range of similar size and configuration of the vessel.
>
> **Claim:** Quantity claim to be filled within 15 days after vessel complete discharge in the port contracted. Quality claim to be filled within 30 days after vessel complete discharge in the port contracted.

17. After the initial confirmation of 20,000 MT, on September 30, 2020, FTO further confirmed a second and a third order for 10,000 MT and 15,000 MT.

18. The three orders, above, brought the aggregate order amount to 45,000 MT at the specified price of $145 USD/MT.

19. FTO negotiated and confirmed the second and third orders above using remote communication technology called WhatsAPP.

20. The WhatsAPP communications occurred among FTO's representative, Lucas Janaudis, and TGO's representatives, Mauricio Bodanese and Managing Director William Cui.

21. The WhatsAPP communications, and related cell messages, confirming the terms for orders 2 and 3 are informally translated from the language of Portuguese as follows (with appropriate notations and emphasis added):

| | |
|---|---|
| **This conversation between Lucas Janaudis and Maurico Bodanese occurs on September 30, 2020 regarding the 15MT order that is the subject of the negotiation:**<br><br>Lucas sent four consecutive messages, at 15:26:<br><br>1 - Good. I will tell you soon<br>2 - But will he reply today?<br>3 - Let's go firm there<br>4 - 15kmt<br><br>Mauricio replies:<br><br>1 - Good. I will be back (15:45)<br>2 - 145 15k same vessel (15:46)<br><br>Lucas adds at 15:47:<br><br>Ago-Out<br><br>Mauricio again says at 15:47:<br><br>Good. I will be back.<br><br>Lucas then mentions at 15:47:<br><br>1 - I am checking with logistics if we can do it on the same vessel<br><br>2 - **Would be 45kmt right**<br><br>**Mauricio says "Yes" at 15:47.** | The following exchange appears from the cellphone of Mauricio Bodanese, the sender, reciting written communications between him and William Cui:<br><br>Mauricio Bodanese replies 16:10<br><br>It's 1 year we don't need rush to finish this vessel<br><br>TGO Managing Director William Cui Replies 16:10<br><br>Ok, 147.5<br><br>Mauricio Bodanese replies 16:40<br><br>1. Tocantins is upset with me. Because I gave backing all past week at 145 and this Monday. They said that they have sold it using this number. They are claiming for we keep 145 for this deal.<br><br>I was not firm with them, but they are very important client and they are opening doors for us and giving me last look always.<br><br>2. If you can reconsider and keep 145 it will be very good for our relationship with them. Also they already have 30k 145 in the same vessel.<br><br>3. The Buyer Eric is very sentimental, for him it is like a cheater from my side.<br><br>**William Cui Replies 17:43**<br>**Ok, go ahead**<br><br>Mauricio Bodanese replies 17:47<br><br>Done |

5

22. The above correspondence on September 11 and 30, 2020 confirmed an agreement for FTO to purchase an aggregate amount of 45,000 MT of the specified fertilizer from TGO at the specified price of $145 USD/MT (the "Agreement").

23. The negotiations, the manner of entering into the Agreement, and the related shipment confirmation process were standard protocol in FTO's business, as informed by FTO's substantial experience and decades of knowledge acquired in the relevant fertilizer supplier industry.

24. After confirmation of the Agreement, approaching soon was the period of Laycan, the date or time period when a shipper expects its product to be loaded for transport to the end-customer.

25. Accordingly, on April 29, 2021, a foreign trade analyst for FTO emailed representatives of TGO, including Managing Director William Cui, to address shipment instructions related to the purchase of the 45,000 MT pursuant to the Agreement.

26. On April 30, 2021, FTO sent a follow-up email to TGO with subject line, "SHIPMENT INSTRUCTIONS."

27. The follow-up email requested receipt confirmation of the April 29 email, and further inquired about exchanging a contract form to formalize the deal: "Do we already have a contract for this deal?"

28. In reply, TGO representative Dalgy Cardona confirmed receipt of shipment instructions, and promised to "return with the contract once available."

29. Despite its promise, TGO never forwarded a formal contract form, and ultimately never made *any* shipment to FTO.

30. To this day, TGO has simply ignored FTO regarding the Agreement-- refusing to perform, respond, or even acknowledge any subsequent communications in any manner.

31. TGO's failure to honor its promise to forward a formal contract did not affect the terms of the Agreement. Under Uniform Commercial Code § 2-207, any additional terms included in a later-provided contract form are deemed proposals for potential acceptance by the parties, subject to the provisions of that section.

32. On June 17, 2021, FTO sent TGO a Notice of Breach reciting the terms of the Agreement, and declaring a breach of its terms.

33. A copy of the Notice of Breach is attached as Exhibit A.

34. As before, TGO ignored the Notice of Breach, and remains in violation of the Agreement to the present day.

35. FTO has retained the law firm of Holland & Knight LLP to represent it in this action and has agreed to pay the firm its reasonable attorneys' fees and costs incurred for its services.

36. All conditions precedent to this action have been performed, or waived.

## COUNT I - BREACH OF EXPRESS CONTRACT

37. FTO re-alleges and incorporates the allegations in paragraphs 1-36 above as if fully set forth herein.

38. This is claim for breach of contract.

39. The Agreement is a valid, enforceable contract.

40. TGO breached the Agreement when it failed to perform in any manner, despite demand made.

41. TGO's breach has caused FTO material damages, including compensatory and consequential damages.

## COUNT II – DECLARATORY RELIEF

42. FTO re-alleges and incorporates the allegations in paragraphs 1-36 above as if fully set forth herein.

43. This is a claim for declaratory relief.

44. FTO asserts that it has a valid, enforceable Agreement with TGO.

45. By failing to acknowledge the Agreement upon the time of performance, FTO understands TGO to be denying the existence or the validity of the Agreement.

46. FTO has a substantial need for this Court to confirm that the Agreement remains a valid and enforceable contract between FTO and TGO.

47. There is a bona fide, actual, present practical need for a declaration as to the rights of the parties under the Agreement.

48. This declaration deals with a present and ascertained state of facts, and involves a present controversy as to the state of facts.

49. FTO's rights are dependent on the law applicable to these facts.

50. FTO and TGO have an actual, present, adverse, and antagonist interest in their rights and performance obligations under the Agreement, either in fact or law.

51. The antagonistic and adverse interests of FTO and TGO are all before the Court by proper process.

52. The relief sought is not merely the giving of legal advice by the Court or the answer to questions propounded from curiosity.

## COUNT III - BREACH OF IMPLIED CONTRACT
### (In the Alternative)

53. FTO re-alleges and incorporates the allegations in paragraphs 1-36, and 38-41, above as if fully set forth herein.

54. This is a claim for breach of an implied contract, brought in the alternative to Counts I and II above.

55. Under the law, an implied contract requires the same elements as an express contract, and differs only in the parties' method of expressing mutual consent.

56. A contract implied-in-fact is an enforceable contract; it is based on an implicit promise, one that is inferred in whole, or in part, from the parties' conduct.

57. Here, to the extent TGO claims the Agreement lacks sufficient clarity in any respect, a fact finder must examine and interpret the parties' conduct to define any terms that TGO may claim are unspoken or require interpretation.

58. At minimum, FTO made an implicit promise, one that is inferred in whole, or in part, from the parties' conduct, to perform its contractual promises above, including the shipment and delivery of 45,000 MT of the subject fertilizer at the specified price of $145 USD/MT.

59. Upon such finding of an implied contract, FTO demands all relief and remedies available for breach of contract, below.

## PRAYER FOR RELIEF AND DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff, Fertilizantes Tocantins S.A., demands judgment against Defendant, TGO Agriculture (USA) Inc., for all appropriate relief and remedies under applicable law, including:

(a) Entering judgment in favor of FTO and against TGO on Count I for Breach of Contract in an amount to be proven at trial, to include all potential damages awardable, including compensatory and consequential damages;

(b) Entering judgment in favor of FTO and against TGO on Count II for Declaratory Relief, to include a declaration and findings that the Agreement was and remains a valid and enforceable contract, TGO material breached the Agreement by its failure to perform according to its agreed terms, and such further relief as may be appropriate pursuant to 28 U.S. Code § 2202, including an order and judgment requiring TGO to specifically perform the terms of the Agreement;

(c) Entering Judgment, in the alternative, upon an implied contract requiring the shipment and delivery of 45,000 MT of the subject fertilizer at the specified price of $145 USD/MT.

(d) Entering judgment for recovery of legal expenses incurred in this action as may be available under relevant law.

                    **HOLLAND & KNIGHT LLP**

*/s/ Jason H. Baruch*
JASON H. BARUCH
Florida Bar No. 10280
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, FL 33602-3644
Telephone: 813-227-8500
Facsimile: 813-229-0134
E-Mail: jason.baruch@hklaw.com
Secondary E-Mail:
wendysue.henry@hklaw.com
*Attorneys for Plaintiff*

Of Counsel:
Christopher Nolan, Esq.
New York Bar No. 4042834
31 West 52nd Street, 12th Floor
New York, New York 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010
Email: chris.nolan@hklaw.com