UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FERTILIZANTES TOCANTINS S.A.,

    Plaintiff,

v.                                    Case No. 8:21-cv-2884-VMC-JSS

TGO AGRICULTURE (USA), INC.,

    Defendant.

_____/

**ORDER**

    This matter is before the Court on consideration of Defendant TGO Agriculture (USA), Inc.'s Motion to Dismiss (Doc. # 27), filed on January 19, 2022. Plaintiff Fertilizantes Tocantins S.A. ("FTO") filed a response in opposition on February 9, 2022. (Doc. # 40). For the reasons set forth below, the Motion is denied.

**I.   Background**

    According to the complaint, Plaintiff FTO is a "top-five fertilizer supplier in Brazil" and provides fertilizer to commercial farmers throughout Brazil. (Doc. # 1 at ¶¶ 1, 11). Defendant TGO is an international exporter and importer of fertilizers, agricultural products, and related chemical products. (Id. at ¶ 2). According to FTO, TGO failed to deliver 45,000 metric tons of fertilizer "after the parties

1

agreed to the order and shipment as confirmed in multiple writings among the parties." (Id. at ¶ 3).

Specifically, FTO alleges that in September 2020, FTO and TGO engaged in "extensive negotiations" for FTO's purchase of a large volume of fertilizer. (Id. at ¶ 12). On September 11, 2020, "FTO sent a confirmation to representatives of TGO via email with the subject 'Purchase Confirmation.'" (Id. at ¶ 15). The September 11, 2020, email contained, among other things, the following terms and conditions: (1) the type of product; (2) a quantity of "20,000 MT +/- 10% sellers option"; (3) a price of $145 US dollars per metric ton; and (4) estimated delivery dates. (Id. at ¶¶ 13, 16).

According to the complaint, "[a]fter the initial confirmation of 20,000 MT, on September 30, 2020, FTO further confirmed a second and third order for 10,000 MT and 15,000 MT." (Id. at ¶ 17). The three orders, combined, brought the aggregate order amount to 45,000 MT at a price of $145 USD/MT. (Id. at ¶ 18). According to FTO, those second and third orders were placed via WhatsApp messages sent on September 30, 2020, between FTO's representatives and TGO's representatives. (Id. at ¶¶ 19-21).

On April 29, 2021, a person affiliated with FTO emailed TGO representatives to address shipment instructions related to the 45,000 MT purchase at issue. (Id. at ¶ 25). The next day, FTO sent TGO an email with the subject line, "SHIPMENT INSTRUCTIONS." (Id. at ¶ 26). That April 30 email "further inquired about exchanging a contract form to finalize the deal: 'Do we already have a contract for this deal?'" (Id. at ¶ 27). A TGO representative replied, confirming receipt of the shipment instructions and stating that TGO would "return with the contract once available." (Id. at ¶ 28). FTO alleges that TGO never forwarded a formal contract and never made any shipment to FTO. (Id. at ¶ 29).

As FTO characterizes it, the writings on September 11 and 30, 2020, "confirmed an agreement for FTO to purchase an aggregate amount of 45,000 MT of the specified fertilizer from TGO at the specified price of $145 USD/MT" and that the parties' negotiations, the manner of entering into the agreement, and the shipment confirmation process are all "standard protocol in FTO's business." (Id. at ¶¶ 22, 23).

Based on these allegations, FTO brings the following causes of action: (1) breach of express contract, (2) declaratory relief, and (3) in the alternative, breach of an implied contract. See (Id.). On January 19, 2022, TGO filed

3

a motion to dismiss the complaint, to which FTO has responded. (Doc. ## 27, 40). The Motion is now ripe for review.

## II.   **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters

judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. **Analysis**

TGO challenges both venue in this District under Fed. R. Civ. P. 12(b)(3) and the merits of the complaint under Fed. R. Civ. P. 12(b)(6). The Court will address the venue argument first.

### A. **Venue**

Federal Rule of Civil Procedure 12(b)(3) states that a party may move to dismiss a case for "improper venue." Rule 12(b)(3) authorizes dismissal "only when venue is 'wrong' or 'improper' in the forum in which it was brought." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 55 (2013). The question of whether venue is "wrong" or "improper" "is generally governed by 28 U.S.C. § 1391." Id. That provision provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any

> defendant is subject to the court's personal
> jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, defendant corporations "reside" "in any judicial district in which such [corporation] is subject to the court's personal jurisdiction with respect to the civil action in question." Id. § 1391(c)(2). And, in a multi-district state like Florida, the personal jurisdiction analysis is limited to contacts specifically in the Middle District of Florida "as though this district were a separate state," rather than the State of Florida at large. Id. § 1391(d). The Court therefore starts by analyzing whether TGO is subject to this Court's personal jurisdiction with respect to the claims here — even though TGO did not move to dismiss under Federal Rule of Civil Procedure 12(b)(2). See Robey v. JPMorgan Chase Bank, N.A., 343 F. Supp. 3d 1304, 1317–18 (S.D. Fla. 2018) (explaining procedure for establishing venue when challenged by defendant corporation).

The plaintiff bears the burden of showing that venue is proper. See Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citing cases). In assessing whether venue is proper, the court must accept all well-founded allegations in the complaint as true, unless contradicted by

affidavits from the defendant. Id. The Court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. Id.

Here, the complaint alleges that TGO "resides in this district and a substantial part of the events or omissions giving rise to FTO's claims occurred here." (Doc. # 1 at ¶ 10). The complaint further alleges that TGO is incorporated in Delaware and has "a primary office" in Tampa, Florida. (Id. at ¶ 8). TGO did not submit any affidavits. Thus, the Court must accept the facts alleged in the complaint as true.

Personal jurisdiction comes in two forms – general and specific. Corporations that incorporate in a particular state or have their principal place of business there have agreed to be subject to the general jurisdiction of the courts of that state. Kinsman v. Fla. State Univ. Bd. of Trustees, No. 6:15-cv-16-GAP-KRS, 2015 WL 11110542, at *2 (M.D. Fla. Apr. 27, 2015). Here, FTO alleges that TGO is incorporated in Delaware and alleges only that it has "a primary office" in Florida. FTO does not allege that TGO's principal place of business is in Florida, and "[a] corporation can have only one principal place of business." El Chico Restaurants, Inc. v. Aetna Cas. & Sur. Co., 980 F. Supp. 1474, 1481 (S.D. Ga. 1997) (citing J.A. Olson Co. v. City of

_Winona_, 818 F.2d 401, 406 (5th Cir. 1987)). Thus, the Court does not have general jurisdiction over TGO.[1]

Turning then, to specific jurisdiction, which arises out of or relates to the defendant's contact with the forum. _See Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement_, 326 U.S. 310, 319 (1945). Courts use a two-part test to decide if there is personal jurisdiction over a nonresident defendant. _Madara v. Hall_, 916 F.2d 1510, 1514 (11th Cir. 1990). "First, we consider the jurisdictional question under the state long-arm statute." _Id._ "If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" _Id._ (quoting _Int'l Shoe_, 326 U.S. at 316). "Only if both prongs of the analysis are satisfied may a federal or

---

[1] Although corporations may also be subject to general jurisdiction in a forum if its affiliations with the forum are "so continuous and systematic as to render [it] essentially at home," such cases are "exceptional." _Daimler AG v. Bauman_, 134 S. Ct. 746, 760-61 (2014). The Supreme Court has rejected the assertion of general jurisdiction anywhere a corporation "engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping." _Id._ at 761. FTO has not shown this "exceptional" circumstance to apply.

state court exercise personal jurisdiction over a nonresident

defendant." Id.

The first prong focuses on Florida's long-arm statute:

A person . . . who personally or through an agent
does any of the acts enumerated in this subsection
thereby submits himself or herself . . . to the
jurisdiction of the courts of this state for any
cause of action arising from any of the following
acts:
     (1)  Operating, conducting, engaging in, or
          carrying on a business or business
          venture in this state or having an office
          or agency in this state.

Fla. Stat. § 48.193(1)(a)(1).

"In order to establish that a defendant is 'carrying on

business' for the purposes of the long-arm statute, the

activities of the defendant must be considered collectively

and show a general course of business activity in the state

for pecuniary benefit." Future Tech. Today, Inc. v. OSF

Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).

"Factors relevant, but not dispositive, to this analysis

include the presence and operation of an office in Florida,

the possession and maintenance of a license to do business in

Florida, the number of Florida clients served, and the

percentage of overall revenue gleaned from Florida

clients." Horizon Aggressive Growth, L.P. v. Rothstein-Kass,

P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (internal citations

omitted). Here, the complaint alleges that TGO maintains a primary office in Tampa, which assertion TGO has not refuted. The Court therefore concludes that TGO operated, conducted, engaged in, or carried on business in this District.

Moving onto the second prong, TGO has sufficient contacts such that exercising personal jurisdiction would not offend the Due Process clause or any of the notions listed in International Shoe. The following test guides this analysis: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75 (1985)). If plaintiff makes the first two showings, "defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id.

First, FTO's breach of contract claims arise out of or relate to TGO's contacts with the Middle District. In its Response to the Motion to Dismiss, FTO represents that Defendant's managing director, who purportedly authored some of the messages at issue in the complaint, resides in Tampa, (Doc. # 40 at 15 n.6), thus raising a reasonable inference that the purported contract was formed in Tampa. As TGO has not submitted any affidavits to the contrary, and this Court is required to favor plaintiff with all reasonable inferences at this stage, the Court finds that the claims arise out of or relate to TGO's contacts with this forum.

Second, TGO purposefully availed itself of the privilege to conduct business in the Middle District of Florida. Applying the minimum contacts test, courts analyze contacts with the forum to see if they "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." See Mosseri, 736 F.3d at 1357. It is important to "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." Id. TGO's operation

11

of a "primary office" out of Tampa, where it may reasonably be inferred that acts committed there related to plaintiff's claims, suffice to meet this prong.

Finally, exercising personal jurisdiction over TGO comports with notions of fair play and substantial justice. Four factors relate to this issue: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." Id. at 1358. TGO has not identified any great burden it faces in defending the suit here. The Middle District has an interest in the suit as some of the activity allegedly occurred here. Likewise, FTO has an interest in obtaining relief in its chosen forum. Finally, the judiciary has an interest in efficiently resolving this dispute instead of dismissing it or sending it somewhere else it could have been filed. In sum, TGO makes no compelling argument why the exercise of jurisdiction here would offend traditional notions of fair play and substantial justice.

At bottom, because TGO is found to "reside" in this District pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in the Middle District of Florida. Accordingly, there is no basis to dismiss under Rule 12(b)(3) or transfer under 28

U.S.C. § 1406. <u>See</u> <u>Atl. Marine</u>, 571 U.S. at 56 ("As a result, a case filed in a district that falls within [Section] 1391 may not be dismissed under [Section] 1406(a) or Rule 12(b)(3)."). The Court now turns to the merits of TGO's Motion to Dismiss.

**B.   Choice of Law**

TGO argues, first, that the express and implied contract claims should be dismissed for failure to state a claim. (Doc. # 27 at 7). As TGO points out, before the Court may delve into the merits of its arguments, it must decide what body of law to apply to the contract claims.

Here, Florida's choice-of-law rules apply to FTO's state-law claims. <u>See</u> <u>Grupo Televisa, S.A. v. Telemundo Commc'ns Grp. Inc.</u>, 485 F.3d 1233, 1240 (11th Cir. 2007) (providing that federal courts considering state-law claims should apply the choice-of-law rules of the forum state). Under Florida's choice-of-law rules, *lex loci contractus* applies in contract matters. <u>Fioretti v. Mass. Gen. Life Ins. Co.</u>, 53 F.3d 1228, 1236 (11th Cir. 1995). Pursuant to this rule, "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties[.]" <u>Rando v. Govt. Emps. Ins. Co.</u>, 556 F.3d 1173, 1176 (11th Cir. 2009) (citing <u>State Farm Mut. Auto. Ins. Co.</u>

v. Roach, 945 So.2d 1160, 1163 (Fla. 2006)). "The determination of where a contract was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract was done." Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1092-93 (11th Cir. 2004) (citation and alteration omitted). "The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror." Id. at 1093.

Here, TGO argues that because no contract was ever executed and because it is entirely unclear what the "last act necessary" was, it suggests instead that the Court apply Illinois law because the parties have a history of using Illinois law in their past commercial dealings.[2] (Doc. # 27 at 8). For its part, FTO argues that because both Illinois and Florida have adopted the UCC, the law and resulting legal conclusions are the same, no matter which state's law is applied. (Doc. # 40 at 3 n.1).

_____

[2] TGO also argues that this Court should not apply the United Nations Convention on Contracts for the International Sale of Goods because the parties have a history of expressly opting out of this Convention. (Doc. # 27 at 8). FTO does not rely on the Convention, instead arguing that Florida or Illinois law applies, and so the Court assumes that FTO is in agreement on this point.

As a threshold issue in cases where the parties dispute the choice of law, courts must first determine whether the case involves a "true" conflict of laws. James River Ins. Co. v. Arlington Pebble Creek, LLC, 188 F. Supp. 3d 1246, 1254 (N.D. Fla. 2016) (citing Tune v. Philip Morris Inc., 766 So.2d 350, 352 (Fla. 2d DCA 2000)). A "true" conflict exists when two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce different results. Id. By contrast, a false conflict exists when the laws of different states are (1) the same, (2) different but would produce the same outcome under the facts of the case, or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws. Id. (citing Tune, 766 So.2d at 352)

The Eleventh Circuit has explained that, where a false conflict exists, courts have two choices. When it is "plainly clear" that there is no difference in the substantive law of the competing states, courts may avoid the conflicts question altogether and simply "decide the issue under the law of each of the interested states." Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1234 & n.21 (11th Cir. 1995).

Alternatively, a court may simply apply the law of the forum state. Id. at 1234 n.21.

Here, as outlined below, Florida and Illinois law are the same with respect to the issues of law before the Court. Therefore, the Court need not formally decide which state's law to apply. See James River, 188 F. Supp. 3d at 1254; see also Travelers Prop. Cas. Co. of Am. v. Anda, Inc., 90 F. Supp. 3d 1308, 1313 (S.D. Fla. 2015) ("Because the result in this case would be the same under both New Jersey and Florida law . . . the Court is presented with a 'false conflict' and therefore foregoes a choice of law determination.").

C.   **Express Contract Claim**

TGO argues that the allegations in the complaint are insufficient to demonstrate the existence of an agreement between the parties for a specific quantity of goods, as required under the UCC's Statute of Frauds. (Doc. # 27 at 8-9). TGO articulates several arguments against contract formation. First, TGO did not accept any request or order from FTO. (Id. at 9-10 ("There is absolutely no email, no conversation, no act of any kind that is alleged by FTO to be TGO's acceptance.")). TGO points out that FTO placed three separate orders, none of which were accepted by TGO. (Id. at 10). TGO characterizes the September 11, 2020, communication

16

as a "mere written offer" that was sent not after the parties entered into an oral agreement but was instead sent after "negotiations." (Id.). As TGO points out, written offers, without proof of acceptance, do not satisfy the Statute of Frauds. (Id.).

Second, TGO argues that the writings do not evidence a meeting of the minds with respect to the quantity of fertilizer, and quantity is a required term under the Statute of Frauds. (Id. at 11). Finally, TGO maintains that the September 30, 2020, communications between the parties cannot form the basis for any contract because they do not reflect an agreement or a meeting of the minds between the parties. (Id. at 11-12).

FTO counters that the Statute of Frauds does not apply under the UCC if a merchant provides written confirmation of the parties' contractual agreement, and the merchant receiving the confirmation does not object within ten days. (Doc. # 40 at 3, 4-5). And FTO frames the September 11, 2020, communication in just this way – as a written confirmation of an oral agreement reached between the parties. (Id. at 5). FTO also characterizes the September 30, 2020, WhatsApp messages as the parties "negotiat[ing]" and "confirm[ing]" additional "parcels" being added to the terms of the original

contract. (Id. at 7). According to FTO, the complaint therefore properly alleges contract formation under the UCC: "The parties agreed to all material terms, which were then reduced to writing via the 'Purchase Confirmation' sent to Defendant on September 11, 2020. Thereafter, the parties updated the quantity of the contractual order via written agreement, confirmed the same in writing (including via correspondence with William Cui, Defendant's Managing Director and one of its highest executives for its US operations), and Defendant promised to ship the same." (Id. at 8).

Both Florida and Illinois have adopted the Uniform Commercial Code (UCC) and have codified the UCC's Statute of Frauds provision as follows:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the

> party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

Fla Stat. § 672.201; 810 ILCS 5/2-201. The statutory notes that accompany each law further provide as follows:

> Between merchants, failure to answer a written confirmation of a contract within ten days of receipt is tantamount to a writing under subsection (2) and is sufficient against both parties under subsection (1). The only effect, however, is to take away from the party who fails to answer the defense of the Statute of Frauds; the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected.

See Editor's Notes, Fla Stat. § 672.201 and 810 ILCS 5/2-201; see also Bodywell Nutrition, LLC v. Fortress Sys., LLC, No. 10-61646-CIV, 2011 WL 31074, at *3 (S.D. Fla. Jan. 5, 2011) (explaining the same); Auto. Spares Corp. v. Archer Bearings Co., 382 F. Supp. 513, 515 (N.D. Ill. 1974) (same).

In the complaint, FTO alleges that after "extensive negotiations," FTO sent TGO a "confirmation" on September 11, 2020, "via email with the subject 'Purchase Confirmation'" that contained many specific terms of the parties' agreement, including the product, quantity, and price. (Doc. # 1 at ¶¶ 12-16). FTO implicitly concedes that there is no signed writing here that satisfies Paragraph 1 of the UCC's Statute

of Frauds. Rather, FTO travels under Paragraph 2, arguing that the September 11, 2020, email was a written confirmation of the contract between merchants, to which TGO did not object.

Taking the allegations in the complaint as true, the Court cannot say that, as a matter of law, there was no contract formed here under the UCC. The UCC provides that between merchants (as both parties are), a written confirmation of the agreement will satisfy the Statute of Frauds if the party to be bound does not timely object. Here, taking the allegations in the complaint as true and favoring FTO with all reasonable inferences, the September 11, 2020, communication satisfies this subsection of the UCC. Similarly, as for the September 30 WhatsApp messages, the complaint alleges that representatives of TGO "confirmed" the additional orders, which were added to the original September 11 agreement in accordance with "standard protocol in FTO's business." (Doc. # 1 at ¶¶ 19-23).

At this stage of the proceedings, the Court cannot discount FTO's version of events and find that no contract was formed as a matter of law. In discovery, the parties may explore multiple avenues for proving whether there was a meeting of the minds here, including the previous course of

dealing between the parties, the representatives' subjective intention in sending those WhatsApp messages, and/or industry custom and practice. See Strout v. Sch. Bd. of Broward Cty., No. 15-61257-CIV, 2016 WL 4804075, at *8 (S.D. Fla. Feb. 1, 2016) (explaining that the issue of contract formation "is typically a question for the factfinder"); see also Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n, 121 F.3d 649, 652-53 (11th Cir. 1997) (upholding jury verdicts and noting conflicting evidence on "key issues" underlying contract formation and whether there was a meeting of the minds).

Thus, the Motion to Dismiss is denied as to FTO's express contract claim.

### D.   **Implied Contract Claim**

In Count III, FTO pleads, in the alternative, a claim for breach of an implied contract. (Doc. # 1 at 9-10). It alleges that a contract implied in fact is enforceable and is based on an implicit promise that can be inferred from the parties' conduct. (Id. at ¶ 56). Here, there is at least an implicit promise by TGO to perform its contractual promises with respect to the shipment and delivery of 45,000 metric tons of fertilizer. (Id. at ¶¶ 58).

The law for contracts implied in fact[3] is the same in Illinois and Florida.

> Under Florida law, a contract implied-in-fact is an enforceable contract. It is based on an implicit promise, one that is inferred in whole, or in part, from the parties' conduct. Typically, in these contracts, the parties have in fact entered into an agreement, but without sufficient clarity, so a fact finder must examine and interpret their conduct to define their unspoken agreement. An implied contract requires the same elements as an express contract, and differs only in the parties' method of expressing mutual consent.

Tracfone Wireless, Inc. v. Simply Wireless, Inc., 275 F. Supp. 3d 1332, 1342 (S.D. Fla. 2017) (citations and quotation marks omitted). And in Illinois:

> A contract implied in fact must contain all elements of an express contract; the only difference between an express contract and an implied contract is that an implied contract is inferred from the facts and conduct of the parties, rather than from an oral or written agreement. Thus, a contract implied in fact arises not by express agreement but, rather by a promissory expression that may be inferred from the facts and circumstances that show intent to be bound. . . . The elements of a contract are an offer, acceptance, and consideration. Thus, a contract implied in fact contains all of the elements of a contract, including a meeting of the minds.

---

[3] While TGO also includes arguments in its Motion pertaining to a claim of a contract implied at law, it is clear from the complaint and FTO's response that its claim is for a contract implied in fact.

BMO Harris Bank, N.A. v. Porter, 2018 IL App (1st) 171308, ¶¶ 52-53, 106 N.E.3d 411, 421 (citations omitted).

Here, TGO argues that the implied contract claim fails for the same reason that the express contract claim fails – there is no meeting of the minds. (Doc. # 27 at 13). For the reasons explained above, the Court cannot say at this juncture that there was, as a matter of law, no meeting of the minds. Accordingly, the Motion to Dismiss is denied as to the implied contract claim.

### E.   Declaratory Judgment Claim

TGO attacks FTO's request for a declaratory judgment on two grounds. First, there is an adequate remedy at law. (Doc. # 27 at 14). Second, the Complaint exclusively seeks retrospective relief regarding harm that happened in the past. (Id.).

As FTO points out, there is a split of authority between courts in the Southern District of Florida – which do not typically let a declaratory judgment claim accompany a breach of contract claim – and courts in the Middle District of Florida, which do. See Rock Custom Homes, Inc. v. Am. Zurich Ins. Co., No. 2:19-cv-607-SPC-NPM, 2019 WL 4477819, at *2 (M.D. Fla. Sept. 18, 2019) (collecting cases). This Court will follow the lead of other courts in the Middle District

and utilize the "hometown precedent." Id.; see also Wichael v. Wal-Mart Stores E., LP, No. 6:14-cv-579-PGB-DAB, 2014 WL 5502442, at *2 (M.D. Fla. Oct. 30, 2014) (explaining that Rule 12(b)(6) motions to dismiss are meant to test the validity of a claim, not its redundancy). Thus, the Court will not dismiss the declaratory judgment claim because a breach of contract claim has been pled.

What's more, it is apparent that the Middle District's practice of letting declaratory judgment claims co-exist, at least at this early stage, with breach-of-contract claims also forecloses TGO's arguments with respect to retroactivity. See Hanus v. AIG Prop. Cas. Co., No. 2:20-cv-814-SPC-NPM, 2020 WL 6154813, at *1 (M.D. Fla. Oct. 20, 2020) (explaining that in the Middle District, courts "regularly" refuse to dismiss declaratory judgment claims that "duplicate" breach of contract claims).

Accordingly, the Motion to Dismiss is denied as to the claim for declaratory relief.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant TGO Agriculture (USA), Inc.'s Motion to Dismiss (Doc. # 27) is **DENIED.**

(2)   Defendant's answer to the complaint is due 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 14th day of April, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE